UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BENJAMIN ROBERT GALLEGOS,

Plaintiff,

v.

GLADDEN BRUCE, et al.,

Defendants.

No.  1:24-cv-01433-KES-SAB (PC)

FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS

(ECF No. 34)

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's third amended complaint, filed October 3, 2025.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

Plaintiff's third amended complaint is vague, confused and conclusory in nature making it difficult to decipher. Plaintiff was endorsed to go to Salinas Valley State Prison (SVSP). M. Scott disregarded his duty with deliberate indifference to Plaintiff's safety by dictating an adverse transfer to Kern Valley State Prison (KVSP). M. Scott fabricated documents and forced an override to transfer Plaintiff. For months, C. Gonzales deprived Plaintiff of his 602-grievance process in order to deprive Plaintiff of having his safety concerns addressed.

When Plaintiff was previously at KVSP, he repeatedly demonstrated self-mutilation after his safety issues were not addressed. Plaintiff was placed in an unsafe environment with inmates

2

that did not have mental health issues.  Chi Lihn and J. Ward disregarded Plaintiff's destabilization, risk to self, and intentionally omitted said facts in order to force Plaintiff back to his cell without health care.  Another doctor admitted Plaintiff into the crisis bed.  Ward was advised by officer Garza of Plaintiff's serious self-injuries, but he circumvented the doctor's order admitting him into the crisis bed.  Neither Lihn nor Ward reported Plaintiff's safety concerns.

After Plaintiff was put in observation he again slit his wrist with a razor blade.  The following day, Lihn and Ward threatened Plaintiff before he was admitted to the crisis bed.

Plaintiff was subsequently transferred to North Kern State Prison (NKSP) where his level of care was lowered to force him back to KVSP.  Plaintiff was placed in the enhanced outpatient program.  Plaintiff was then transferred to and placed in administrative segregation at California Men's Colony.  Plaintiff was scheduled to go to the enhanced outpatient program at California State Prison, Sacramento but staff fabricated mental health documents to circumvent the transfer and had him sent to the state hospital at Salinas Valley State Prison.

Plaintiff filed grievances for several months  Appeals Coordinator C. Gonzales acted with deliberate indifference by causing the grievances to disappear without a log number and unlawfully denied them in an attempt to not address Plaintiff's safety concerns.

A psychiatrist fabricated legal documents to have Plaintiff discharged from the Psychiatric Inpatient Program (PIP) without anyone knowing.

On April 9, 2018, Plaintiff was transferred to KVSP.  Plaintiff started a fire for which Plaintiff received felony charges.

Officers M. Rivera and R. Reynaga were present in Receiving and Release at KVSP. They told Plaintiff to go to yard and state his safety concerns.  Plaintiff was being sent to A yard instead of a sensitive needs yard to cause further distress.  Plaintiff told M. Rivera that he was not going to the yard.

Out of nowhere, R. Reynaga shoved Plaintiff's arm with pepper spray within an inch of Plaintiff's right eye causing it to inflate.  Reynaga continued with the pepper spray in retaliation for not allowing them to force Plaintiff on the yard.   When Reyana stopped, he falsely stated

3

"You Spit on him, You Threw your shoe at his head!"   Plaintiff was placed in handcuffs then escorted out near the floor spout where decontamination takes place.  Plaintiff was pulled to his knees sitting on his heals when Reynaga stepped on the handcuffs and grabbed his hair pulling him backwards.  Plaintiff was begging for water but was denied any decontamination.  Plaintiff was dragged back to his cell and thrown on his stomach at which point M. Rivera "drives" his knee into Plaintiff's lower back.  Plaintiff is left in pain for an hour.  Reynaga and Rivera eventually returned to Plaintiff's cell and he is placed in a locked cell where is unable to sit.  Near shift change M. Rivera takes the handcuffs off and ordered Plaintiff to take off his soaked boxers.  Plaintiff uses the boxers that were given to him in an attempt to wipe off the excess pepper spray.  Plaintiff is left naked and the nurse subsequently fabricated her report to cover up what was done to him.  Reynaga also fabricated his report to reflect that Plaintiff threw his shoe and spit on him during the decontamination process.

Plaintiff was not provided medical care for 10 days following the arson allowing the healing process to clean up most of the damage to his eye, and the physician lied about there being no damage to his eye.  Plaintiff was subsequently transferred to SVSP.

The Deputy Inspector General was doing an audit of SVSP when he discovered the missing excessive force grievance and a video recorded interview was taken.  However, the video recording could not be found.

When Plaintiff is returned to KVSP, C. Gonzales alters the excessive force grievance to a "Living conditions" and erases it from Plaintiff's central file.  Plaintiff has been attempting to reinstate the excessive force grievance and he has been denied access to the courts because he cannot exhaust all administrative remedies.

Plaintiff expressed his safety concerns and named his enemies to Lieutenant Waddle and Sergeant Stanley who stated they would document his central file.  Counselor Kline attempts to discharge Plaintiff early from administrative segregation.  Plaintiff's central file was never documented or the information was erased.  When Plaintiff was released, Kline altered his sensitive needs yard status back to general population and labeled him a Sureno gang member.  Plaintiff was immediately forced to manufacture weapons to be placed in secure housing.

4

In 2021-2022, Plaintiff was forced into housing where there was a documented enemy from KVSP, and all his enemies were removed from his central file.

## III.

## DISCUSSION

### A.      Transfer

"It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." McKune v. Lile, 122 S. Ct. 2017, 2027 (2002).  The Supreme Court has held that incarcerated persons enjoy no constitutional right to incarceration in a particular institution. See Olim v. Wakinekona, 461 U.S. 238, 244–48 (1983). "[T]he Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system." Id. at 245. Instead, "confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." Id. (citing Meachum v. Fano, 427 U.S. 215, 224–225 (1976)); see also Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (intrastate prison transfer does not implicate Due Process Clause).  Thus, a non-consensual transfer is not per se violative of either due process or equal protection rights, see Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); Stinson v. Nelson, 525 F.2d 728, 730 (9th Cir. 1975), and no due process protections such as notice or a hearing need be afforded before a prisoner is transferred, even if the transfer is for disciplinary reasons or to a considerably less favorable institution, see Montanye v. Haymes, 427 U.S. 236, 242 (1976); Johnson, 948 F.2d at 519.

California has adopted regulations concerning the subject of transfers of prisoners within the state prison system. Those regulations, however, contain no substantive limitations on the prison officials' discretion to grant or refuse such transfers. See Cal Penal Code § 5080; Cal. Code Regs. tit. 15, § 3379; People v. Lara, 155 Cal. App. 3d 570, 575-76 (1984).

Here, Plaintiff contends that Defendant M. Scott was deliberately indifference by disregarding his duty by overriding the endorsed institution transfer to SVSP.  Scott's decision dictated an order which forced Plaintiff to transfer to KVSP.  However, Plaintiff's allegations are insufficient to give rise to a claim for relief.  The mere fact that M. Scott overruled a prior transfer

5

order does not give rise to a constitutional claim for relief because "the assignment of inmates within the California prisons is essentially a matter of administrative discretion." Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997); see also Dennis v. Doser, No. 1:22-cv-00818-HBK (PC), 2023 WL 4188031, at *3, 7 (E.D. Cal. June 26, 2023) (dismissing claim against prison official who allegedly refused to give a behavioral override); Johnson v. Ryan, 55 F.4th 1167, 1180 (9th Cir. 2022) (a state may create a liberty interest, but there is no Constitutional liberty interest in avoiding transfer to more restrictive conditions of confinement unless those conditions "impose an atypical and significant hardship under any plausible baseline" (quoting Wilkinson v. Austin, 545 U.S. 209, 223-224 (2005))).

**B.      Excessive Force**

When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).  In order to establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline.  Hudson v. McMillian, 503 U.S. 1, 6–7 (1992).  In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response.  Id. at 7, 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citations omitted)).

The Eighth Amendment requires prison officials to intervene if they are aware of another official's use of excessive force. Robins v. Meecham, 60 F.3d 1436, 1441 (9th Cir. 1995).  In a failure-to-intervene claim, a prisoner must show that a prison official's act or omission (1) was objectively, sufficiently serious, and (2) the official was subjectively, deliberately indifferent to inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hearns v. Terhune, 413

6

F.3d 1036, 1042 (9th Cir. 2005).

Here, liberally construed Plaintiff states a cognizable claim for the alleged use of excessive force by Defendants R. Reynaga and M. Rivera.

**C.      Deliberate Indifference to Safety**

Plaintiff claims that M. Scott was deliberately indifferent to his safety needs by authorizing the transfer to KVSP. Plaintiff also alleges that C. Gonzales was deliberately indifferent to his safety by depriving him of the inmate grievance process to present his safety concerns.

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the health and safety of prisoners. Farmer v. Brennan, 511 U.S. 825, 832 (1994). But a prison official violates the Eighth Amendment only if: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. Id. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. Id. at 837. Neither negligence nor gross negligence warrant liability under the Eighth Amendment. Id. at 835-36 & n 4. An "official's failure to alleviate a significant risk that he should have perceived but did not, ... cannot under our cases be condemned as the infliction of punishment." Id. at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)).

Here, the allegations in the complaint lack factual support showing that M. Scott was aware of any safety concerns based on his decision to authorize Plaintiff's transfer to KVSP. At most, such action seems to amount to negligence, which is not actionable. See Farmer, 511 U.S. at 835-36 & n 4. In fact, Plaintiff acknowledges that at some point he was placed in medical observation. (ECF No. 34 at 6.) Plaintiff's statement that M. Scott was deliberately indifference by disregarding his duty in overriding the endorsed institution transfer to SVSP is conclusory in nature and does not give rise to a claim for relief. See Leer v. Murphy, 844 F.2d 628, 634 (9th

Cir. 1988) (Plaintiff must link each Defendant to allegations of deliberate indifference to safety so as to show how each Defendant actually and proximately caused the deprivation of plaintiff's federal rights of which he complains). In addition, there are insufficient facts to support Plaintiff's claim that he faced a substantial risk of harm or that Defendant C. Gonzales was deliberately indifferent to the risk based on depriving him of the inmate grievance process. Plaintiff's conclusory and vague allegations are insufficient under Iqbal. Plaintiff fails to provide specific details about his alleged safety concerns at KVSP, other than his desire to be placed in a secured housing. Thus, Plaintiff simply states vague and conclusory allegations that Defendants knew he faced a substantial risk of serious harm but fails to explain or demonstrate they drew the inference. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Further, his allegations that he was improperly housed do not amount to cruel or unusual punishment. Myron v. Terhune, 476 F.3d 716, 719 (9th Cir. 2007). Accordingly, Plaintiff fails to state a cognizable claim for relief.

> **D.     Appeal Process**

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "The Supreme court has held that a State creates a protected liberty by placing substantive limitations on official discretion, [and] that to obtain a protectable right an individual must have a legitimate claim of entitlement to it, [but] there is no legitimate claim of entitlement to a grievance procedure." Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (citations and quotations omitted). Plaintiff's allegations of a due process violation arising from the processing of her inmate grievance fails to state a claim because there is no protected liberty interest or independent constitutional right to a prison administrative appeal or grievance system. Id.; see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." (citing Mann, 855 F.2d at 640)). Therefore, Plaintiff's allegation that Defendants violated his due process rights by throwing away or disregarding grievances fails as a matter of law.

///

**E.      Deliberate Indifference to Serious Medical Need**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Rhodes, 452 U.S. at 346.  Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong.

First, the alleged deprivation must be, in objective terms, "sufficiently serious...." Farmer, 511 U.S. at 834. Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety...." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. This "involves a two-part inquiry." Thomas, 611 F.3d at 1150. "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." Id. (quoting Farmer, 511 U.S. at 837). "This part of [the]

9

inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious." Thomas, 611 F.3d at 1150 (citation omitted). "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." Id. (citing Farmer, 511 U.S. at 844) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.")  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

Here, Plaintiff contends that the nurse fabricated her medical report of injury in an attempt to cover up for what was done to Plaintiff, and he was refused medical for over ten days allowing the healing process to clean up most of the damage done to his eye, then the primary care physician lied about no damage or visible tears to his right eye.

Plaintiff's allegations are insufficient to demonstrate that any medical professional was deliberately indifferent to a serious medical need.  First, Plaintiff has failed to demonstrate a serious medical need.  Indeed, Plaintiff acknowledges that the healing process "cleared up" most of the damage to his eye.  Second, Plaintiff has failed to demonstrate that any prison or medical professional knew of and disregarded an excessive risk to Plaintiff's medical need.  There are no factual allegations that any Defendant was aware that during the alleged two-week period that Plaintiff was in need of medical attention or aware of facts from which an inference could be drawn that he needed medical attention, and actually drew that inference but deliberately disregarded Plaintiff's need for medical attention, count one does not state an Eighth Amendment claim.  In addition, Plaintiff does not indicate whether he sought medical care for his alleged injuries and what, if any, response he received to such request.  Furthermore, Plaintiff cannot base his claim of deliberate indifference on his disagreement with the treatment or medical provided or any disagreement among medical professionals.  See Toguchi v. Chung, 391 F.3d at 1057. Accordingly, Plaintiff fails to state a cognizable claim for relief.

**G.    False Allegations**

The creation of false evidence, standing alone, is not actionable under § 1983. See Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison

10

record has not been recognized); Johnson v. Felker, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted).  Moreover, "plaintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false rule violation against plaintiff." Jones v. Prater, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. Jun. 1, 2012); see also Youngs v. Barretto, No. 2:16-cv-0276 JAM AC P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation report does not rise to the level of cruel and unusual punishment) (citations omitted).

Plaintiff alleges that Defendants falsified reports relating to the use of force. However, Plaintiff fails to state a claim against these Defendants for the creation of false reports or the bringing of false charges.

### F.    Prison Regulations

To the extent that Plaintiff attempts to bring any claims solely based on a defendant's violation of prison rules and policies, he may not do so, as alleged violations of prison rules and policies do not give rise to a cause of action under § 1983. Section 1983 provides a cause of action for the deprivation of federally protected rights. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." Sweaney v. Ada Cty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996)); Davis v. Kissinger, No. CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb. 3, 2009).  Nor is there any liability under § 1983 for violating prison policy. Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009). Thus, the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under section 1983.

### G.    Cover-Up Allegations

To the extent that Plaintiff attempts to raise a cover-up claim, it is premature. Allegations that officials engaged in a cover-up state a constitutional claim only if the cover-up deprived a

11

plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover-up. See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 625 (9th Cir. 1988) (cover-up "allegations may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit."); Rose v. City of Los Angeles, 814 F. Supp. 878, 881 (C.D. Cal. 1993). A cover-up claim is premature when, as here, Plaintiff's action seeking redress for the underlying constitutional violations remains pending. See Karim-Panahi, 839 F.2d at 625 (claim alleging police cover-up of misconduct was premature when action challenging misconduct was pending); Rose, 814 F. Supp. at 881 ("Because the ultimate resolution of the present suit remains in doubt, [p]laintiff's cover-up claim is not ripe for judicial consideration.")

### H.    Denial Access to Courts

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) (overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015)). But the right does not require a particular methodology. See Lewis, 518 U.S. at 356. It guarantees the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id.  It does not promise to turn inmates into effective litigators. Id. at 354-55; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). The right of access secures the ability to present non-frivolous claims to the court, it does not secure a right to discover claims or litigate them effectively once filed. See Lewis, 518 U.S. at 354-55; Phillips, 477 F.3d at 655. The right is restricted to non-frivolous criminal appeals, civil rights actions under 42 U.S.C. § 1983, and habeas corpus petitions. Lewis, 518 U.S. at 353 n.3, 354-56.

To establish an access to the court violation, a prisoner must identify an actual injury. Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011).

12

An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 349. An actual injury is a jurisdictional requirement and may not be waived. Id. at 348-52.

Here, Plaintiff only vaguely suggests that Defendants deprived him of access to the courts. Although Plaintiff states that he was unable to exhaust the administrative remedies, he has not alleged any actual injury with respect to a pending cause.  Accordingly, Plaintiff fails to state a cognizable claim for relief.

### I.      Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A viable retaliation claim in the prison context has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The filing of a grievance or complaint, whether verbal or written, formal or informal, is protected conduct. Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017). Threats to sue and/or pursue criminal charges fall within the purview of the constitutionally protected right to file grievances. Id. at 1044. However, to establish a retaliatory motive, the plaintiff "must show that [the] protected conduct was the substantial or motivating factor behind the defendant's conduct." Johnson v. Ryan, 55 F.4th 1167, 1201-02 (9th Cir. 2022) (citing Brodheim, 584 F.3d at 1271).

Here, Plaintiff contends that officers used excessive force against him because he refused to go out to the yard.  However, Plaintiff has failed to demonstrate that the use of force was because of his exercise of a *constitutional* right.  Accordingly, Plaintiff fails to state a cognizable claim for relief.

### J.      Further Leave to Amend

The Court has afforded Plaintiff multiple opportunities to amend his pleading to state non-conclusory and cognizable claims for relief.  However, the third amended complaint continues to

state a cognizable claim for excessive force only, and Plaintiff has essentially repeated the same allegations that the Court previously found to be deficient. Accordingly, further amendment would be futile. Consequently, the Court will recommend dismissal of all claims, except the excessive force claim against Defendants R. Reynaga and M. Rivera, from the third amended complaint without further leave to amend. See Silva v. Di Vittorio, 658 F.3d 1090, 1105–06 (9th Cir.2011) (affirming dismissal without leave to amend of pro se state prisoner's RICO claim where claim was frivolous and could not be cured by amendment); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir.2009) (affirming dismissal without leave to amend where court advised plaintiff of pleading deficiencies but plaintiff failed to correct those deficiencies in amended pleading); Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir.2007) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and had discussed with plaintiff the substantive problems with his claims); Gerber v. Hickman, 291 F.3d 617, 623 (9th Cir.2002) (dismissal with prejudice proper where leave to amend prisoner civil rights complaint would be futile).

## IV.

### RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed only on Plaintiff's excessive force claim against Defendants R. Reynaga and M. Rivera; and

2. All other claims and Defendants be dismissed from the action for failure to state a cognizable claim for relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver

of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 11, 2026**

STANLEY A. BOONE
United States Magistrate Judge

15